**Alexandria**

JAMES LOUIS WILLIAMS

v.

SUSAN ELAINE BOWER WILLIAMS

No. 1480-85

Decided March 17, 1987

20

---

COUNSEL

Judith M. Bragan, for appellant.

Ilona Ely Freedman, for appellee.

OPINION

**KOONTZ, C.J.** — James Louis Williams appeals from a final order and decree of divorce entered by the Circuit Court of Fairfax County on October 22, 1985. He claims that the trial court erred in granting an excessive monetary award to his wife, Susan Elaine Bower Williams, by (1) failing to consider all of the factors contained in Code § 20-107.3(E), and (2) considering the issue of support in its application of Code § 20-107.3. We agree that the trial court erred in its application of the statute and reverse.

While there is some conflict in the evidence, the essential facts are not in dispute. James and Susan were married in 1967 and separated for the last time on March 30, 1983. Three children were born of the marriage. When the bill of complaint was filed on August 17, 1984, James was unemployed and legally blind as a result of a diabetic condition. He was previously employed by the federal government and that employment ended in 1978. His current income was $298 per month in social security disability benefits and $77 per month in food stamps. In addition he was permitted to live in special subsidized housing at a cost of $35 per month. Susan was employed by the Fairfax County School Board with an annual income of approximately $21,000. The parties' primary marital asset was the $70,000 equity in the marital home. In addition, they jointly owned a $27,513.15 bank account derived from a fire insurance policy, $2,000 from the sale of a 1979 Datsun automobile and approximately $9,400 represented by Susan's retirement plan. Various other minor items of marital personal property are not in dispute for purposes of this appeal.

In the decree of October 22, 1985, the trial court awarded a final divorce to James from Susan on the ground of a separation for a period of more than one year. Susan was awarded custody of the three minor children and the trial court specified that while she was entitled to receive child support, James was financially unable to pay support at the present time. After reciting that consideration had to be given to all of the factors enumerated in Code § 20-107.3, the trial court awarded Susan her one-half share of the jointly owned home and a judgment for $35,000 and directed that this judgment be recorded as a lien against James' interest in the home. The court further provided that "the said judgment may be satisfied by the Complainant (James) signing the deed and conveying completely his one half interest in said home to the

defendant (Susan), that the intent of the Court is to award the said home to the defendant." Finally, the trial court awarded James certain specific items of personal property, $20,000 from the joint bank account, and awarded the remainder of the personal property and the bank account to Susan. Specifically, Susan was awarded all of her retirement fund and the $2,000 proceeds from the sale of the Datsun. In addition to these monetary provisions, the trial court reserved the right of both parties to receive spousal support in the future.

In summary, for purposes of our analysis here, the trial court's decree resulted in an award of approximately $88,000 to Susan and $20,000 to James. Further, the decree made no present award of spousal support nor did it award Susan child support.

█ At the outset of our analysis, based upon our careful review of the record in this case, we are convinced that the chancellor considered all of the factors enumerated in Code § 20-107.3(E) in making his final disposition. Our conclusion in this regard, therefore, is not based solely on the recital to that effect in the final decree. In addition, although we held in *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341 S.E.2d 829, 831 (1986) that there is no presumption in Virginia favoring equal division of marital property, we also held in *Bentz v. Bentz*, 2 Va. App. 486, 490, 345 S.E.2d 773, 775 (1986) that a court is not constrained from making an equal division if it finds it appropriate to do so upon consideration of the factors set forth in Code § 20-107.3(E).

The error we find in this case which mandates a reversal is the chancellor's *application* of these factors. Furthermore, we find, as appellant contends, that the chancellor erroneously, although with obvious laudable intentions, permitted his concerns for James' inability to pay child support to persuade him to construct an equitable disposition in conflict with the statutory mandate of Code § 20-107.3.

We have previously addressed the statutory scheme of Code § 20-107.3 for granting a monetary award in an appropriate case based upon the equities and the rights and interests of each party in the marital property. We have noted that this Code section is not merely an authorization to distribute real and personal property accumulated during the marriage. *Rexrode v. Rexrode*, 1 Va.

App. 385, 393, 339 S.E.2d 544, 549 (1986).[1] Perhaps it is unfortunate that this relatively new statute has come to be commonly referred to as an "equitable distribution" statute; the use of the term "distribution" in connection with this statute has caused considerable confusion and misapplication of the statute among the bench and bar. Accordingly, we take this opportunity to again address the broad scheme of the statute in the context of the facts of this particular case.

■ Unlike similar statutes in other states which authorize the actual *distribution* of marital property by assignment or allotment between the parties, the hallmark of the Virginia statute is a monetary award which can be satisfied by the party against whom such award is made by conveyance of property, subject to the approval of the Court. Code § 20-107.3(D). Thus, the trial court's concern is an equitable division of the jointly acquired marital wealth of the spouses during their marriage and not the equitable distribution by assignment or allotment of their specific property. We recognize that in many cases, if not most, logic and practicalities might dictate that the trial court's task would be simplified by allotting specific property to each spouse and then making a monetary award to attain an equitable result based on any monetary difference in the prior allotments. Our legislature did not adopt such a statutory scheme in Code § 20-107.3 and if a change is to occur in the statute, that is clearly the prerogative of the legislature and not the courts.

■ In the present case the chancellor allotted specific marital property not titled in the names of both parties which is not permitted by Code § 20-107.3(C). *See McGinnis v. McGinnis*, 1 Va. App. 272, 276, 338 S.E.2d 159, 161 (1985). More importantly, the chancellor awarded Susan a monetary award of $35,000 and directed that this award be a lien on James' interest in the marital residence. The provisions of Code § 20-107.3(D) give the party against whom the award is made the option of conveying property (or an interest in property) to satisfy the award with the court's approval. This Code section does not give that option to the chancellor. This distinction is no mere technicality. We believe that the legislature intended to leave to a particular spouse the ultimate control over his or her property. Accordingly, we hold that the

[1] *Rexrode* was decided on February 4, 1986, several months after the chancellor entered his decision in the instant case.

trial court erred in alloting specific marital property not titled in the names of both parties and in ordering that the monetary award to Susan would constitute a lien on James' interest in the marital residence.

We turn now to the issue whether the trial court awarded an excessive monetary award by considering the issue of support in its application of Code § 20-107.3. Again our analysis must begin with the statutory scheme embodied in this Code section. Code § 20-107.3(F) specifically provides:

> The Court shall determine the amount of any such monetary award without regard to maintenance and support awarded for either party or support for the minor children of both parties and shall, after or at the time of such determination and upon motion of either party, consider whether an order for support and maintenance of a spouse or children shall be entered or, if previously entered, whether such order shall be modified or vacated.

The clear legislative intent embodied in this Code section is to maintain an appropriate separation between considerations of child or spousal support and considerations of an equitable division of marital wealth. This is appropriate because support and equitable distribution awards are based on entirely different considerations and serve entirely different purposes. Court ordered support is intended to place the burden on a spouse or parent to maintain his or her family rather than placing that burden on the state. Furthermore, the amount of support is based on current needs of the spouse and/or children and the ability of the other spouse/parent to pay from current assets. The "equitable distribution" statute, however, is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse. In short, different and distinct types of interests are involved between adjusting the wealth of the marriage and providing spousal and child support and the statutory scheme of Code § 20-107.3 recognizes this. Code § 20-107.3(F) provides that once the marital wealth is reorganized and distributed, the amount of support to be ordered or previously ordered may be affected and where appropriate altered by the court. We need only note by way of example that

when an income producing asset has been conveyed by one spouse to the other to satisfy a monetary award that such a conveyance might logically affect the needs of the receiving spouse or the ability to pay support by the conveying spouse.

In the present case our careful review of the record convinces us that the chancellor fashioned his monetary award to accomplish support for the children while expressly providing in the decree that James was "financially unable to pay same at the present time." In addition, the record reveals that the chancellor, to his credit, was concerned with fashioning an award which would allow Susan and the children to continue to occupy the marital home and at the same time an award which would not adversely affect James' disability benefits or his entitlement to subsidized housing. In the chancellor's words with regard to the $27,000 bank account:

> What I am interested in . . . with this money . . . is to do it so that it benefits him, so it benefits her, and so it benefits the three children.

> \* \* \*

> I don't want to split it up in such a way so that the doctors and the federal government and people of Fairfax County end up with all of this money.

In addition, further insight into the chancellor's reasoning is found in the following comments of the chancellor:

> But one possibility it seems, and I am thinking about options is to give her the house, give him the $27,000. If I did that, then what happens to that $27,000? Is the government going to take it or are the doctors going to insist on it?

> \* \* \*

> Another possibility would be to give her the house and the $27,000 less something to pay off his debts, and order her to pay spousal support to him, in effect interest on that $27,000. Does that help them out?

> \* \* \*

But the wife and the kids - I would rather it go to the wife and kids rather than go to the government I guess is the bottom line.

* * *

But if I say that [he] get[s] half the house and [he] get[s] half the funds, I am sure that is going to hurt the wife and kids terribly, and it is probably going to hurt him.

■ We recite these portions of the record not to criticize the chancellor, but rather to make our guidance in this case and similar ones clear. The statutory scheme of Code § 20-107.3(D) permits the chancellor "based upon the equities and the rights and interests of *each party in the marital property*" to grant a monetary award. (emphasis added). The amount of the monetary award and the method of payment shall be determined by the chancellor after consideration of the eleven factors enumerated in Code § 20-107.3(E). Those eleven factors simply do not include spousal or child support considerations. Furthermore, § 20-107.3(F) specifically mandates that the amount of the monetary award shall be determined without regard to support considerations.

In the present case, the amount and method of payment of the monetary award to Susan was determined and designed to provide the marital home to her and the children and to effectively relieve James of his obligation to pay child support. If the statute authorized such an award, perhaps it could be justified in this particular case. Again, such an authorization rests solely with the legislature and not the courts. Without that authorization, however, the result of the decree of October 22, 1985, was to distribute the marital wealth of the parties by misapplying the mandate of Code § 20-107.3 and cannot be permitted to stand.

Accordingly, that portion of the decree concerning the parties' martial property is reversed and we remand this case to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

Coleman, J., and Duff, J., concurred.