COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


STEPHEN A. EISENBERGER

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2549-95-2         CHIEF JUDGE NORMAN K. MOON
                                        NOVEMBER 19, 1996
SUZANNE S. EISENBERGER


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Theodore J. Markow, Judge

            Lawrence E. Luck (Meyer, Goergen & Marrs, on
            briefs), for appellant.

            Phoebe P. Hall (Franklin P. Hall; Hall &
            Hall, on brief), for appellee.



        Stephen A. Eisenberger appeals from the final decree of

divorce and distribution of property order of the circuit court.

 Appellant raises the following arguments on appeal: (1) whether

the circuit court erred in characterizing appellant's

post-separation contributions to his Crestar-thrift account as

marital property; (2) whether the circuit court erred in awarding

each party their respective pension benefits without first

declaring the specific value accorded each of the parties'

pension benefits; (3) whether the circuit court erred in refusing

to permit a reservation of spousal support for the appellant

where such reservation was requested; (4) whether the circuit

court erred in requiring appellant to pay a lump sum to appellee

in accord with the court's use of the present offset method to

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

distribute marital assets which included the marital portion of appellant's deferred management incentive plan awards for 1992 and 1993; (5) whether the circuit court erred in characterizing the appellant's management incentive plan award for 1993 as marital property; and (6) whether the circuit court erred in refusing to amend or to suspend its final decree in order to hear additional evidence where appellant gave notice to the court within the period prescribed by Rule 1:1 of appellant's termination from employment, a factor considered by the court in making its distribution and support order.[1]  In her response, appellee raises the additional argument of whether the circuit court erred in classifying the wife's disability benefits as marital where the disability occurred after the separation of the parties.  We find that: (1) the circuit court erred in classifying the entirety of appellant's post-separation contributions to his Crestar-thrift account as marital property; (2) the circuit court's failure to announce the specific value accorded appellant's and appellee's pension benefits constituted

_____

[1]We note that appellant's formal objections were filed in a written statement of objections on October 25, 1995, some nineteen days after the court's final decree of October 6, 1995.  In view of the record, we find that appellant made sufficient indication of his objections during the evidentiary hearing to warrant our consideration of the issues before us with the exception of appellant's argument concerning the circuit court's use of the present offset method in distributing marital assets which included appellant's management incentive awards.  We wish to make clear, however, that such written objections alone, filed days after the court's final decree, are not regularly sufficient to comply with Rule 5A:18.

harmless error; (3) the circuit court did not err in refusing to grant appellant's request for reservation of spousal support; (4) appellant failed to properly object to the circuit court's distribution of appellant's deferred management incentive awards via the present offset method and consequently, we do not reach this issue on appeal; (5) the court did not err in classifying appellant's management incentive plan award which appellant earned in 1993 as marital property; (6) the court did not err in refusing to amend or to suspend its final decree to hear additional evidence after being informed of appellant's termination from his position with Crestar Bank; and (7) appellee failed to timely object to the court's classification of her disability benefits as marital property, and we therefore do not reach this issue on appeal.

Appellant and appellee were married on April 20, 1973. A final divorce decree was entered on October 10, 1995, at which time appellant was forty-eight years of age and appellee was fifty years of age. Divorce was granted on the ground that from approximately January 14, 1994, the parties had lived separate and apart without any cohabitation or interruption for a period of more than one year.

During the majority of the parties' marriage appellant was employed by Crestar Bank and at the time of trial served as a vice-president in Crestar's commercial financial division. During the course of appellant's employment, he worked in Norfolk

and Chesapeake, returning to the marital abode on weekends and occasional week nights. Appellee, who suffered from depression, remained in Richmond in the parties' home during this period. Throughout the period appellant was employed in Norfolk and Chesapeake, appellee expressed her desire to relocate to Norfolk to be with appellant. Appellant refused and informed appellee that when he returned to Richmond he did not wish to resume living with appellee. In late 1993, appellant was reassigned to Richmond. Appellant returned to Richmond and in January 1994, appellant moved out of the marital abode and established a separate residence. Appellee expressed her desire that she did not want the marriage to end at this time, but she cooperated with appellant's decision to establish a separate residence. Appellee continued to suffer from depression at the time that appellant chose to depart from the marital abode.

Appellant established a variety of retirement assets prior to his separation from appellee in January of 1994. These included two IRAs, a Fidelity Investors IRA in his name, valued by stipulation at $95,072.80, classified as marital property, and a First Union IRA, valued by stipulation at $22.97, classified as marital property. Appellant also participated in a Crestar Thrift and Profit Sharing Plan which was valued at $46,718. In addition, prior to issuance of the final divorce decree, appellant received three Management Incentive Plan awards. These awards consisted of credit for deferred compensation in the

amounts of $5,000 earned in 1992, $8,000 earned in 1993, and $10,000 earned in 1994. All three awards were actually declared in February of the preceeding year. The awards earned in 1992 and 1993 were classified as marital property.

Appellant also had accrued pension benefits under a Crestar pension plan which would begin to provide income to appellant at age sixty-five. During the evidentiary hearing, appellant and appellee expressed extreme disagreement as to the appropriate valuation of the pension plan. Appellant's expert, Maxwell G. Cisne, a certified public accountant recognized by the trial court as an expert in pension valuations, offered different valuations of appellant's pension plan based on the number of years of completed employment time with Crestar used in the calculation. Cisne calculated the present value of appellant's plan at $14,278.02. This value was based on a projected monthly benefit of $784.13, a figure reflecting appellant's benefits if his employment with Crestar terminated on July 26, 1995, a point reflecting appellant's vested retirement benefits at approximately the time of the August 14 hearing. Alternatively, Cisne valued the plan at $10,645.55, if the monthly pension benefit used was $584.64, the value of appellant's benefits if he had terminated employment with Crestar on December 31, 1993, immediately prior to the parties' separation in January of 1994.

Appellee disagreed with the use of either value, arguing that appellant had not terminated his employment with Crestar on

either date, as these figures assumed. Instead, appellee offered a value of $2,700 per month as the proper benefit amount to be used, as this would be the benefit to appellant if he remained with Crestar until age sixty-five according to Crestar's 1995 Executive Benefits Statement. The Benefit's Statement was interpreted during the hearing by appellee's witness, Sue S. Sampson, Esq., a member of Crestar's legal department, serving as Crestar's designee. Sampson presented three valuations of appellant's retirement benefits based on appellant's last salary increase and differing retirement dates and accumulated years of service. Appellant's benefits were calculated at $784.13 if appellant had terminated employment with Crestar on July 26, 1995. If appellant opted for early retirement and terminated employment at age fifty-five, his benefits were calculated at $732.97 a month. Retirement at age sixty would result in a monthly benefit of $2,090.19 and retirement at age sixty-five was calculated to produce a monthly benefit of approximately $2,700. Appellant argued that the sum of $2,700 per month should not be used as it was "grossly speculative" given the possibility that appellant might leave Crestar prior to reaching age sixty-five.

Appellee was employed throughout the majority of the marriage by the Commonwealth of Virginia. Appellee began work for the Commonwealth as a librarian on July 1, 1971 and was so employed until her retirement on disability on June 1, 1994. Appellee accrued pension benefits under the Virginia Retirement

System (VRS). At the time of trial the VRS provided appellee a monthly disability benefit of $2,474.34. In addition appellee received $1,238 in Social Security disability payments. During the evidentiary hearing, appellant's expert calculated a present value of appellee's VRS benefits as $476,691.32, based on an assumption of a 3.5% cost of living adjustment, an 8% discount rate and a predicted death at age 80.4. Appellee rejected this value, arguing that the appropriate valuation of her benefits was $18,475.62. This sum is the amount that appellee could withdraw if she had left work on June 1, 1994, a date near the date of the evidentiary hearing. Appellee also argued that appellant's figure of $476,691.32 was inappropriate in that it was highly speculative. Appellee noted that appellant's calculation presumed appellee's continued disability. However, appellee's disability, based on depression, is subject to annual review and should she be determined to no longer be disabled, or if she returned to full-time work, her disability retirement income would cease.

In addition to their individual retirement and savings accounts, the parties possessed certain other marital assets distributed by the court. The most significant of these other assets was the parties' marital residence, with a fair market value of $130,500. The residence was encumbered by a mortgage with a balance of $41,119.56 and an equity loan with a balance of $23,801.82. The couple also owned a home-built airplane, made by

appellant, valued at $30,000.

The circuit court ordered the following distribution of the marital estate: (1) each party was to keep their respective pension benefits; (2) appellant was to receive 70% of the value of the home-built airplane, the appellee 30%; (3) appellant was to be solely liable for a contingent guarantee that appellant executed for a past business venture; and (4) all other marital assets were to be divided fifty-fifty.

I.  Characterization of appellant's post separation contributions to his Crestar-thrift account as marital property

Throughout the course of appellant's employment with Crestar he participated in Crestar's Thrift and Profit Sharing Plan ("Crestar-thrift plan").  The circuit court valued appellant's Crestar-thrift account as of the evidentiary hearing at $46,718 and classified the entire account as marital.  At the time of the parties' separation on or about January 14, 1994, appellant's Crestar-thrift account was valued at $17,419.90, consisting of 298.0380 shares of Crestar stock (valued at $13,748.78) and 327.1983 units of Crestfunds Value Fund (valued at $3,671.12). Following separation, appellant converted the entire 327.1983 units of Crestfunds Value Fund into an additional 87.669 shares of Crestar common stock, bringing the pre-separation total to 385.708 shares.  The pre-separation stock also continued to appreciate.  Appellant also continued to purchase additional shares of Crestar stock via the Crestar-thrift plan.  The purchases were made with funds deducted from appellant's monthly

-8-

pay check, combined with matching funds from Crestar.  In February of 1994, appellant also received a profit sharing award of $3,855.76 into his Crestar-thrift account.

Code § 20-107.3(A)(2) addresses the treatment of deferred compensation plans:

> All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

Here the appellant has made purchases of additional Crestar stock subsequent to the parties "last separation."  Consequently the post-separation stock is not presumptively treated as marital under the statute.  However, the post-separation stock was commingled with the 385.708 shares of stock that the parties agree is properly characterized as marital property.  Code § 20-107.3(A)(3)(d) addresses the burdens of the parties in valuing commingled property:

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

Accordingly, the burden is on the proponent of the property's classification as separate to produce evidence, a preponderance of which proves a portion of the asset to be separate. Here, the burden was on the appellant to prove what portion of his Crestar-thrift account was attributable to the post-separation purchases. Appellant introduced into evidence activity sheets, prepared by Crestar, indicating the various activity in the thrift account from 1/1/93 through 12/31/94. Using this information it is possible to determine what portion of the thrift account was separate as of 12/31/94. Had appellant introduced activity sheets for the period of 1/1/95 - 7/25/95, it would also be possible to accurately determine the separate and marital portions of the thrift as of 7/25/95, however appellant failed to enter those summaries. Nevertheless, the activity sheets of 1/1/93 to 12/31/94 allow for determining that some part of the account is separate.

The activity sheet for 1/1/94 - 3/31/94, beginning at the point just prior to the parties' separation on 1/14/94, indicates that the marital portion of the account was $17,419.90. To this sum must be added $3,855.76, which was a profit sharing award earned by appellant in 1993 prior to the parties' separation but not awarded to him until February of 1994. See infra part V. There is no separate indication of the profit sharing award on the activity sheet as it is grouped with the employer contribution which totalled $4,455.34 from 1/1/94 - 3/31/94.

-10-

Adding the profit sharing award of $3,855.76 to the initial $17,419.90 which the parties agree is all marital, we reach a total of $21,275.66 which constitutes the marital portion at that time. To this sum was added funds from four different sources over the next two years: 1) additional employee contributions; 2) matching contributions from the employer (employer contributions); 3) profit sharing awards; and 4) earnings on the account in the form of interest and/or dividends. By calculating what percentage of earnings was attributable to the marital portion of the account throughout the life of the account from 1/1/94, it is possible to determine what portion is properly classified as marital. We do not have activity sheets from 12/31/94 on and consequently the calculations can not be employed beyond 12/31/94. The following calculations indicate the marital and separate shares as of 12/31/94:

$21,275.66 (marital share as of 1/1/94 [$17,419.90 + $3,855.76 profit sharing award = $21,275.66]) divided by the total in the account as of 3/31/94 which was $23,081.38 (the total indicated on the activity sheet was in fact $23,288.31, but subtracting the earnings during this period of $206.93, we have a total of $23,081.38 which reflects post-separation earnings and contributions to the account) results in a finding that the marital portion of the thrift accounted for 92.3% of the earnings on the account. The earnings indicated for 1/1/94 - 3/31/94 are $206.93. Applying the percentage, 92.3% of this sum is $191.

Accordingly, earnings attributable to the marital portion of the account were $191 while $15.93 was attributable to the post-separation contributions made by appellant and his employer.

Turning to activity from 4/1/94 – 6/30/94, the marital portion at the beginning of the period was $21,466.66 ($21,275.66 – the original marital portion as of 1/1/94 + the marital earnings from 1/1/94 – 3/31/94 of $191) divided by the total in the account at the end of the period which was $24,836.07 (reflecting the post-separation contributions from 1/1/94 – 6/30/94), indicates that the marital portion accounted for 86% of the earnings while the separate portion accounted for 14% of the earnings.  The reported earnings of $1,428.03 multiplied by these percentages results in $1,228.11 in marital earnings and $199.92 in separate earnings.

Turning to activity from 7/1/94 – 12/31/94, the marital portion at the beginning of the period was $22,693.77 ($21,465.66, the marital portion as of 4/1/94 + the marital earnings from 4/1/94 – 6/30/94 of $1,228.11) divided by the total in the account at the end of the period which was $29,672.69 (reflecting the post-separation contributions from 1/1/94 – 12/31/94), indicates that the marital portion accounted for 76% of the earnings while the separate portion accounted for 24% of the earnings.  The reported earnings of –$3,983.63 multiplied by these percentages result in –$3,027.56 loss to the marital portion and –$956.07 loss to the separate portion.

Consequently, as of 12/31/94, accounting for post-separation contributions by appellant and his employer, and accounting for earnings and losses on the respective marital and separate portions of the thrift account, the marital portion of the account was $19,666.21 on 12/31/94. The actual account balance as of that date was $25,689.06, resulting in a determination that $6,022.85 of the thrift account is properly classified as separate property.

Because appellant failed to provide activity sheets for 1/1/95 – 7/25/95, it is not possible to continue these calculations for the remainder of the period. From 1/1/95 to 7/25/95 there were substantial additional contributions to the account as indicated on the summary sheet provided by Crestar. On 7/25/96 the thrift account had a balance of $46,222.77, indicating additional contributions and earnings of $20,533.71. Without the summary sheets it is impossible to say what portion of this sum constitutes earnings attributable to the marital portion. Appellant failed to prove these amounts by failing to submit activity sheets for 1/1/95 – 7/25/95. However, it was established at trial, via the testimony of Sue Scott Sampson, that $4,818.27 of the additional $20,533.71 in the account was a profit sharing award earned by appellant for his work in 1994. As this is post-separation earnings, the $4,818.27 is properly classified and proven as non-marital property.

In addition to the $4,818.27 being proven as separate

property, it is possible to calculate what portion of the $20,533.71 constitutes employee contributions and matching employer contributions. Through Sampson's testimony, it was established that during 1995 appellant was contributing 6% of his base pay and that Crestar matched 50% on the dollar up to the first 6% of contributions, such that appellant was contributing 9% of his base pay. It was also established that appellant's present base pay was $78,500 and that contributions were made on each pay period and that there were 26 payroll dates. Accordingly, estimating[2] that thirteen such pay periods had occurred by 7/25/96, it is possible to determine that appellant and his employer had added $3,532.50 to the account (($78,500 x .09%)/2 = $3,532.50).

Totaling the profit sharing award of $4,818.27 with the employer/employee contribution of $3,532.50 it is possible to determine that $8,350.77 of the $20,533.71 is separate property. Adding this amount to the $6,022.85 that is proven separate property by analyzing the activity sheets from 1/1/94 - 12/31/94, it appears the trial court should have declared $14,373.62 of the $46,222.77 as separate property. The remaining $31,849.15 should be treated as marital and divided in accordance with the trial court's order, that is 50% to each party.

II. Award of pension benefits without assignment of specific value of each party's pension benefits

---

[2]There is no indication of the actual dates of payment.

In accordance with Code § 20-107.3, the circuit court characterized appellant's and appellee's respective pension benefits as marital property and further ordered that each party was to retain their respective pension benefit proceeds. Code § 20-107.3 provides that

> [u]pon decreeing the dissolution of a marriage . . ., the court, upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property . . . .

In considering valuation of the marital estate, we have held that while "Virginia's statute `mandates' that trial courts determine the ownership and value of all real and personal property of the parties," nevertheless, "consistent with established Virginia jurisprudence, the litigants have the burden to present evidence sufficient for the court to discharge its duty." Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987). Here the parties produced qualified witnesses, Maxwell G. Cisne and Sue S. Sampson, providing evidence about the value of the parties' respective pensions. An extreme range of values was offered by each party and each side produced valuations of the other's benefits that differed dramatically from the party's own estimation of the value of their pension. Appellee estimated the present value of her pension benefits at $18,475.62. This is in contrast to the sum of $476,691.32

-15-

offered by appellant as the appropriate calculation to be used in comparing appellant's and appellee's benefits. Appellee received $2,473 monthly from her state pension. With regard to appellant's benefits, appellant's expert valued the present value of his pension at $14,278.02 or $10,645.55 with monthly payments of either $784.13 or $584.64 depending on the selected date of termination of appellant's employment with Crestar. Appellee, however, offered a figure of $2,700 as the appropriate valuation. Here the circuit court was left with the unenviable task of ascertaining the actual value, amongst the extremes offered, of the parties' respective pension benefits. Despite the difficulties involved, we have held that even as here, where the parties have presented such remarkably different valuations, the court must assign value where the parties have provided the necessary evidence to prove valuation. <u>Bowers</u>, 4 Va. App. at 618, 359 S.E.2d at 551. Consequently, it was error for the court to have failed to indicate to the parties the specific value assigned their respective pension benefits. However, the record indicates that the court engaged in considerable valuation of the parties' respective pensions and actively reviewed the statements of both parties' witnesses with regard to the value of the pensions. The court's letter of September 20, 1995, evidences the court's valuation of the benefits:

> The disability benefits being received by
> Mrs. Eisenberger are marital property and are
> not to be shared by Mr. Eisenberger, either
> as to payments received or reduced to present
> value. In making this determination the

> following factors of § 20-107.3 are
> considered: Paragraphs (1), (2), (4), (5),
> (6), and (10).  Especially the court
> considers that Mrs. Eisenberger is determined
> to be permanently disabled as contrasted with
> Mr. Eisenberger's good health and ability to
> provide well for himself.  Also considered is
> that while in her depression, Mr. Eisenberger
> left, thereby imposing on Mrs. Eisenberger
> the burden and expense of living on her own
> and otherwise impacting adversely on the
> marital estate.  Whatever family assets are
> available should be utilized to allow her to
> live in relatively the same standard of
> living as before his desertion.  This may be
> done without any impact on Mr. Eisenberger's
> standard of living.  Also considered is that
> Mr. Eisenberger's pension will not be shared
> by Mrs. Eisenberger.

While the court fails to state in its letter, final decree, or elsewhere in the record, the exact numerical value assigned to the pensions, nevertheless the court's order of distribution adequately demonstrates valuation by the court sufficient to meet the intent if not the letter of Code § 20-107.3, and consequently, we find the error to be harmless.

We also find unpersuasive appellant's argument that the circuit court abused its discretion when considering Mrs. Eisenberger's standard of living.  "In reviewing an equitable distribution award, we rely heavily on the trial judge's discretion in weighing the particular circumstances of each case."  Aster v. Gross, 7 Va. App. 1, 8, 371 S.E.2d 833, 837 (1988).  Further, "[f]ashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without

-17-

evidence to support it." <u>Srinivasan v. Srinivasan</u>, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Here, appellant misinterprets the court's statement in its opinion letter of September 20, 1995. The court stated specifically that it considered the parties' respective physical conditions and appellant's departure during appellee's illness in arriving at its decision. Code § 20-107.3(E)(4) and (5) specifically authorize the court to consider these factors in making an equitable distribution. Further, Code § 20-107.3(E)(5) specifically instructs the court to consider "[t]he circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce . . . ." The court's comments regarding the parties continuing to enjoy the same standards of living do not indicate a separate ground of consideration. Rather, the comments are merely proffered to explain the court's rationale that in light of the appellant's contribution to the deterioration of the marital estate by leaving appellee during her illness and the appellee's permanent disability, equity is served by allowing her to maintain her pension. Accordingly, we find no abuse of discretion.

III. Refusal to permit a reservation of spousal support

Code § 20-107.1 guides the circuit court in making decrees as to maintenance and support of spouses. Specifically, it provides that "[t]he court, in determining <u>whether</u> to award support and maintenance for a spouse, <u>shall consider the</u>

circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery and any other ground for divorce under the provisions of subdivisions (3) or (6) of § 20-91 or § 20-95." Here the court found sufficient evidence of appellant's desertion to deny him such support and consequently refused to reserve the right to spousal support. Appellant accurately asserts that desertion is no longer a per se bar to spousal support, see Reid v. Reid, 7 Va. App. 553, 561, 375 S.E.2d 533, 538 (1989), nevertheless, Code § 20-107.1 requires the court to consider evidence pertaining to the circumstances of the dissolution of the marriage. See Thomasson v. Thomasson, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983). Accordingly, in weighing the equities of the parties, where the court finds proof of desertion, it may properly find such proof warrants a refusal to grant or reserve support. Such is the case here. Although divorce was not sought or granted on fault grounds, the record reflects that the court heard ample testimony ore tenus concerning the circumstances of divorce and therefrom determined appellant had deserted appellee during appellee's illness. The court was well within its statutory authority to deny reservation of support on these grounds.

### IV. Court's use of the present offset method to distribute marital assets including appellant's deferred management incentive plan awards

In issuing its final decree the court employed the present offset method to distribute those assets that the court

determined were to be divided equally between the parties.  After determining which assets each party would retain, the court calculated that $29,722.19 should be paid by appellant to effectuate the fifty-fifty division of the assets.  Included among the assets assigned and accounted for via the present offset method was the marital portion of the appellant's deferred management incentive plan awards.

During the evidentiary hearing both appellant and appellee participated in discussion with the court as to the appropriate method of allocating the assets once the court had made findings as to the appropriate distribution of the assets.  Immediately following the court's decision to declare the $10,000 award for calendar year 1994 separate property, the court addressed the issue of what method of allocation would be employed.  At that time appellant outlined two alternatives for the court:

> [T]he court could look at the present value of those income streams [income streams from the deferred awards] and then in the greater scheme of things allocate the assets, perhaps other assets, to balance the scale and not touch these specific assets.
> Or the Court could if it decided to enter a QDRO if, as and when, [sic] particular percentage should go to [appellee].  Frankly, I believe that the simpler matter would be to look at these things from the broader perspective before making a determination with respect to any particular retirement asset how to treat it for purposes of QDRO.

Appellant reiterated his preference for the present offset method following some additional discussion, and appellee then stated

her preference for the present offset method: "[w]e would certainly like to use a present offset method because my client would like to have the house and as much cash as possible at this point in time." The court then asked appellee if she wanted to use the present offset method in handling the marital portion of the deferred compensation awards--"You want it done that way as opposed to her getting money when he gets it?" Appellee responded in the affirmative and the court then asked the appellant if he objected to this. The appellant did not state an objection or a grounds for objection but instead stated that:

> Your Honor, I think it is premature to determine whether -- <u>my suggestion to the Court is we look at all the retirement benefits and see how it can be handled equitably, and if it cannot be handled equitably with present offset, then we deal through and [sic] if, as and when through a QDRO.</u>

(Emphasis added.) Appellant said nothing else with regard to the values that should be accorded the management incentive plan awards.

In its final decree the court used $5,000 and $8,000 as the present values of the awards. Appellant's expert testified to a present value of $4,580.36 for the $5,000 and a $6,913.14 for the $8,000 award. Appellant now objects to the court's use of the present offset method to allocate the marital portion of the deferred compensation awards on the grounds that the court did not use the unrebutted present value calculations offered by appellant's expert. Rule 5A:18 of the Supreme Court of Virginia

-21-

provides:

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

Appellant's comments at the time the court specifically inquired about the use of the present offset method are fairly read as indicating appellant's agreement with the use of the method. However, even if they do not constitute agreement, they certainly do not amount to a cognizable objection of any kind. Likewise, appellant's objections to the final decree, which clearly evidenced the court's valuation of the management incentive plan awards at $5,000 and $8,000 respectively, do not constitute proper objection. The circuit court's order was entered on October 6, 1995, the written objections to the order, filed some nineteen days later on October 25, 1995, are not timely under Rule 5A:18. The law contemplates that objections be made during trial or before entry of the final decree. <u>See</u> Code § 8.01-384.[3]

---

[3]Code § 8.01-384 provides in pertinent part:

> Arguments made <u>at trial</u> via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal.

(Emphasis added.)

While appellant's objections were filed within the period within which the circuit court retained discretion to amend or suspend its order, the objections were not necessarily timely made for purposes of preserving the issues for appeal to this Court. It was within the discretion of the trial court to vacate the judgment and reconsider the issue. Under the circumstances, we do not find the trial court to have abused its discretion in failing to vacate the judgment. Accordingly, we find the appellant has waived his right to argue this issue on appeal, and we therefore decline to consider it here.

### V. Characterization of the appellant's management incentive plan award for 1993 as marital property

Code § 20-107.3(A)(2) addresses the treatment of deferred compensation plans:

> All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property.

Here, appellant argues that the management incentive plan award made to him in February 1994, which appellant opted to defer, was improperly categorized as marital property, because it was awarded after his separation from appellee. The pertinent question before us is whether appellant "acquired" the award made in 1994, at that time, or previously. Crestar's Management

Incentive Compensation Plan states that "[a]n employee is eligible for consideration for an incentive award for a Year if he meets the eligibility standards established by his employer for such Year."  App. at 784.  Assuming the employee meets the criterion in the given year, the employee's supervisor may recommend the employee for an award for a given year by submitting the employee's "performance ratings and recommendations . . . to the committee or its designee on or before February 15 of the following Year . . . ."  App. at 786.  Despite appellant's arguments to the contrary, the plan provisions make clear that the award to appellant in February of 1994 was made in view of his performance during 1993.  That the specific amount of the award was not known, and that the plan committee reserved the right to ultimately make or not make an award, does not negate the fact that any award eventually made was made for the work of the appellant in calendar year 1993, during the period of the appellant's marriage.  Consequently, the court did not err in classifying the award made in February 1994 as marital property.

## VI.  Court's refusal to amend or to suspend its final decree in order to hear additional evidence in light of appellant's termination from employment

The granting or denial of a motion to reconsider is within the sound discretion of the trial court.  See Morris v. Morris, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986).  The court's decision to deny an award or reservation of support will be

upheld where the court has considered the appropriate statutory factors, as delineated by Code § 20-107.1. Where these factors are considered, the court's decision will only be reversed where there is a clear abuse of discretion. Thomasson, 225 Va. at 398, 302 S.E.2d at 66.

Here, the court based its denial of support on its finding that appellant deserted appellee during her illness. As noted supra at II., proof of desertion was properly considered by the circuit court and when weighed with the other statutory factors, resulted in a permissible decision by the court to deny support. The record indicates that the court also gave proper consideration to the other statutory factors, specifically including appellant's earning capacity, age, and health. While appellant's position with Crestar was clearly considered by the court, it was not the only, or even most important factor considered by the court in reaching its decision. Appellant's current employment was one of many circumstances weighed by the court. Accordingly, the court's refusal to hear additional evidence concerning the change in this single circumstance was well within the court's broad discretion in weighing all the equities of the parties in determining support.

VII. Classification of the wife's disability benefits as marital

In its letter opinion of September 20, 1995, the court determined that "[t]he disability benefits being received by [appellee] are marital property and are not to be shared by

[appellant] . . . ."  This ruling was incorporated into the court's final decree which was endorsed "Seen and Objected to" by appellee.

In her brief, appellee indicates her objection to the court's classification of her benefits as marital property. While an objection need not be made in a specific form, Rule 5A:18 requires that the action taken must embody the objection and reason therefor.  The "Seen and Objected to" endorsement of the final decree does not constitute a reasoned objection.  Rule 5A:18 provides that "[a] mere statement that the judgment or award is contrary to the law and the evidence is not sufficient"; it follows that a statement that an order is "Seen and Objected to" is also insufficient.  Accordingly, we find that appellee has waived her right to argue this issue on appeal and we therefore decline to consider it here.

The case is remanded to the trial court to enter a new order compatible with this opinion to reflect our holding in Part II that $31,849.15 of appellant's thrift account be treated as marital property and $14,373.62 be treated as separate property.

Affirmed in part,
reversed in part,
and remanded.