### Richmond

## Lurlene Fuller Breschel

### v.

## Robert Rody Breschel

August 28, 1980.

Record No. 791172.

Present: All the Justices.

*Joshua D. Rosenberg* for appellant.

*H. Franklin Minor* for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

In this appeal, we must determine whether a wife was free from legal fault in leaving her husband and consequently not guilty of desertion.

On December 14, 1978, Robert Rody Breschel filed a bill of complaint against his wife, Lurlene Fuller Breschel, seeking a divorce *a vinculo matrimonii* on the ground of willful desertion. The wife filed an answer denying the alleged desertion and a cross-bill seeking a divorce based upon Code § 20-91(9)(a), which allows a divorce to be granted where the parties have lived separate and apart for one year. Following a hearing, the chancellor concluded that the wife had deserted her husband and entered an order granting the husband a divorce on that basis and dismissing the wife's cross-bill, including her request for spousal support.

The parties were married in 1974. For approximately one year, two teenaged children by the wife's former marriage were the only children in the household. The husband subsequently obtained custody of a child born during his previous marriage and brought him into the household in 1975. This child, Henry, was seven years old at that time.

The wife testified that she left her husband on June 8, 1977,

because of her deteriorating health and her husband's failure to assist her in maintaining the home and in safeguarding her health. She had suffered from multiple sclerosis for more than fifteen years prior to her marriage in 1974, but her condition had stabilized prior to and during the first year of the marriage. She perceived, however, a deterioration in her physical condition after Henry moved into the household. The wife testified that she "could not cope with" Henry because he refused to obey her and did not accept her as a member of the household. This testimony was supported by the testimony of her mother, who cited several instances of Henry's harassment of and lack of respect for his stepmother. In addition, the wife contended that it was physically impossible for her to maintain the large house in which the Breschels lived. Her daughter was somewhat helpful, but her husband did not provide significant assistance in maintaining the house. Although she asked him to hire someone to clean the house once a week, he was unwilling to do so.

In a *de bene esse* deposition introduced into evidence at the *ore tenus* hearing, Dr. Laurie E. Rennie, the wife's physician since 1968, provided information about multiple sclerosis in general and the wife's condition in particular. He noted that the physical condition of a patient with multiple sclerosis can deteriorate for many reasons, including emotional trauma and exhaustion. He concluded Mrs. Breschel was not physically able to perform household duties required in anything more than a three-room flat, considerably smaller than the house in which the Breschels lived. He noted that the wife's weight had recently fallen to a critically low level, she had fallen into a "marked depression," her left leg had become more numb, and her gait had been further impaired. He also testified that the deteriorating marital situation, including the problems with the husband's son, was "probably . . . the major factor" in the deterioration of the wife's physical condition. In addition, Dr. Rennie noted that he had been willing to meet with Mr. Breschel to discuss Mrs. Breschel's physical disability but that Mr. Breschel never came to talk with him.

Sarah McCowan, a social worker employed in a Family and Children's Services Clinic, testified that the wife came to the clinic because of her concerns about Henry, the husband's son. In Henry's meeting with McCowan, he indicated that he was misbehaving so that he would be returned to the custody of his mother and that he was doing everything he could to drive his stepmother out of the home. McCowan also testified that in her meetings with the husband,

she suggested that Henry undergo counseling. The husband, however, indicated that since his child had been in therapy before and it had not been helpful, he was unwilling to have his child undergo counseling again. In subsequent meetings with the wife, McCowan noticed the deterioration in the wife's physical condition. When the wife concluded in these meetings that her only option was to leave the house, McCowan supported her decision because she believed the wife "was right on the verge of a complete breakdown."

The husband testified that McCowan informed him his wife "could not cope with a typical nine-year-old boy" and suggested Henry be sent to Henry's mother's home for the summer or come in for counseling. He also testified that his wife told him "if he [Henry] stayed there [the Breschel residence] for the summer . . . she was going to her mother's until her health got better." He refused, however, to send Henry away for the summer.

On appeal, the wife contends that she was justified in breaking off marital cohabitation because her health was endangered by remaining in the household.* The husband, on the other hand, argues that competent and credible evidence supports the chancellor's determination that the wife was not justified in leaving her husband.

A party is guilty of desertion, as the term is used in Code § 20-91(6), when he or she breaks off matrimonial cohabitation with an intent to desert. *Carter* v. *Carter*, 199 Va. 79, 84, 97 S.E.2d 663, 667 (1957). Nevertheless, where a party breaking off cohabitation establishes that such conduct was legally justified, that party is not guilty of desertion. *Graham* v. *Graham*, 210 Va. 608, 616, 172 S.E.2d 724, 730 (1970). When the desertion is established, the duty of going forward with the evidence of justification then rests upon the defendant, unless the justification appears from the testimony adduced by the plaintiff. 210 Va. at 610, 172 S.E.2d at 726.

We have previously held that a spouse is not justified in leaving the other unless the conduct of the other is sufficient to establish the foundation of a judicial proceeding for divorce. *See, e.g.,* *Hoback* v. *Hoback*, 208 Va. 432, 435-36, 158 S.E.2d 113, 116

---

* In the petition for appeal, Mrs. Breschel's counsel argued that Mr. Breschel impliedly consented to Mrs. Breschel's departure from the home. This argument, however, was not raised before the trial court and consequently will not be considered on appeal. Rule 5:21. In the petition for appeal, Mrs. Breschel's counsel also contended that Mrs. Breschel lacked any intent to desert. This argument was deleted from Mrs. Breschel's brief and not raised in her counsel's oral argument. Moreover, this alleged error was not stated "with reasonable certainty at the time of the ruling." Rule 5:21. Thus, we will not consider this argument in this appeal.

(1967); *Wimbrow* v. *Wimbrow,* 208 Va. 141, 143-44, 156 S.E.2d 598, 601 (1967). This principle remains applicable to claims of constructive desertion. A spouse may not break off cohabitation and successfully claim constructive desertion unless the other's conduct is sufficient to establish the foundation of a divorce proceeding. Nevertheless, *Capps* v. *Capps,* 216 Va. 382, 219 S.E.2d 898 (1975), and *Rowand* v. *Rowand,* 215 Va. 344, 210 S.E.2d 149 (1974), indicate that a spouse may be free from legal fault in breaking off cohabitation, and hence entitled to support and maintenance, even thought he or she cannot establish the other's conduct constituted the foundation of a proceeding for divorce. In *Rowand,* we held that a wife who left her husband at his insistence was free from legal fault even though she could not establish his constructive desertion. In *Capps,* we held that a wife was free from legal fault where she left her husband because of a single incident of his physical abuse even though she was not entitled to a divorce grounded upon his cruelty. Likewise, we conclude that a wife is free from legal fault in leaving her husband where she reasonably believes her health is endangered by remaining in the household and she has unsuccessfully taken whatever reasonable measures might eliminate the danger without breaking off cohabitation.

■ At the time she left her husband, Mrs. Breschel had noticed a significant deterioration in her physical condition which she attributed to her inability to take care of the house and her inability to cope with her husband's young son. Her physician confirmed this assessment of her situation. She sought counseling for herself and sought to involve both her husband and his son in the counseling process. She asked her husband to provide someone who could assist in household cleaning, but to no avail. She lived in a household where one of the family members was attempting to do everything he could to drive her out of the home. When it became apparent that her inability to cope with her husband's son was affecting her health and that all avenues for resolving her difficulty with the son had been foreclosed, she warned her husband that if the child remained in the home over the summer, she "was going to her mother's until her health got better." When he refused to send his son away for the summer, she broke off cohabitation because she reasonably believed that her health was endangered by remaining in the home. These facts compel a conclusion that she was without legal fault in breaking off cohabitation.

The chancellor's decree awarding the husband a divorce on the

basis of his wife's desertion is reversed. The cause will be remanded for further proceedings on the wife's cross-bill, and the chancellor will receive such additional evidence as may be required to determine the issue of spousal support in accordance with Code § 20-107.

*Reversed and remanded.*