## Salem

IRENE GRACE REXRODE

v.

EMANUEL DALE REXRODE

No. 0084-85

Argued June 26, 1985

Decided February 4, 1986

COUNSEL

Harry P. Anderson, Jr. (Anderson, Parkerson and Shields, on briefs), for Irene Grace Rexrode.

R. Toms Dalton, Jr. (Allen, Dalton and Watkins, on briefs), for Emanuel Dale Rexrode.

OPINION

**KOONTZ, C.J.**—This case involves an appeal and a cross-appeal from a divorce decree and an award of equitable distribution. The issues raised on appeal are: (1) whether the trial court erred in granting a divorce to the husband based on the wife's desertion; and (2) whether the trial court erred in its award of equitable distribution.

I.

Irene Grace Rexrode and Emanuel Dale Rexrode were married in 1975 and made their marital home in Augusta County. This was the second marriage for both parties. Husband had four children, ages 8 to 17, by his prior marriage living with him. There is considerable testimony in the record as to incidents of husband's behavior which can best be characterized as extreme rudeness to-

wards wife and her relatives. Wife was humiliated and embarrassed by these incidents and consequently found the marital home to be an increasingly difficult environment in which to live. Nevertheless, she apparently worked diligently in making a home for her husband and his children.

Mrs. Rexrode became quite nervous and emotionally upset during the course of the marriage. The chancellor found that the cause of her psychiatric problem was not altogether clear:

There is no doubt that Mrs. Rexrode was unhappy in her marriage, and that the marriage had not been what she had expected. However, after reviewing the testimony of Dr. Spanier and Dr. Talbert, it appears that Mrs. Rexrode's main problems arose not from anything that occurred during the marriage, but from Mrs. Rexrode's fears concerning her ability to care for herself should she leave Mr. Rexrode and suffer adverse legal consequences. In addition, she appeared to be quite depressed over the fact that this was her second marriage to fail.

Mrs. Rexrode left the marital home periodically when she became nervous and emotionally upset and sought medical attention from her physician for this condition. She returned to the marital home on all occasions except the last one. This last incident of her leaving is the basis of this case.

On October 23, 1983, Mrs. Rexrode entered a psychiatric hospital in Richmond under the care of Dr. Spanier. The parties did not resume cohabitation after this date. Mrs. Rexrode maintains that she sought psychiatric care from Dr. Spanier and had no intention of deserting her husband. Mrs. Rexrode's Bill of Complaint was filed on November 28, 1983, during her hospitalization in Richmond which lasted until December 8, 1983. Dr. Spanier testified in pertinent part in his deposition that:

her main problem seemed to be a feeling of hopelessness and being overwhelmed in the marriage, that she described as being one in which she seemed to be very much victimized and she had a feeling of powerlessness and a feeling of: "I'm unhappy here but I'm terrified of leaving him because I'm afraid of what is going to happen and I am afraid I won't be

able to stand up on my own and I am afraid of what could happen to me in court."

Dr. Spanier further testified that other factors considered by him in prescribing her treatment were the recent deaths of her brother, mother and sister, who had been supportive of her. Dr. Spanier concluded that it was not in her best interests to resume her marital status with Mr. Rexrode.

Based on the depositions of the parties and their witnesses, the trial court granted Mr. Rexrode a divorce based on the desertion of Mrs. Rexrode. The trial court further determined that Mrs. Rexrode did not have justification for leaving the marital home and that Mr. Rexrode was not guilty of constructive desertion. We find no error in these decisions of the trial court.

The rule is firmly established in Virginia that a divorce decree based solely on depositions is not as conclusive on appellate review as one based upon evidence heard *ore tenus,* but such a decree is presumed correct and will not be overturned if supported by substantial, competent and credible evidence. *Capps v. Capps,* 216 Va. 382, 384, 219 S.E.2d 898, 899 (1975).

There was extensive conflicting testimony in the depositions presented by both parties and their witnesses as to the relationship between husband and wife and the situation as it existed in the marital home. The chancellor resolved that conflict in favor of Mr. Rexrode. There is no dispute that Mrs. Rexrode left the marital home and subsequently, while she remained hospitalized in Richmond, filed her Bill of Complaint alleging constructive desertion by reason of cruelty. Dr. Spanier's testimony is equivocal as to the cause of her emotional difficulties and his testimony supports the chancellor's conclusion that her emotional difficulties "arose not from anything that occurred during the marriage, but from her fears concerning her ability to care for herself should she leave Mr. Rexrode and suffer adverse legal consequences." In addition to these fears, she understandably suffered the emotional strain of the loss of close family members in recent years.

A spouse may not break off cohabitation and successfully claim constructive desertion unless the other's conduct is sufficient to establish the foundation of a divorce proceeding.

*Breschel* v. *Breschel,* 221 Va. 208, 212, 269 S.E.2d 363, 366 (1980). While the conduct of Mr. Rexrode can be characterized as rudeness, resulting in Mrs. Rexrode's unhappiness, the evidence does not establish that it was the cause of her emotional difficulties.

 A spouse may be free from legal fault in breaking off cohabitation, and hence entitled to support and maintenance, even though she cannot establish that the other spouses's conduct constituted the foundation of a proceeding for divorce. *See Capps* v. *Capps,* 216 Va. 382, 385, 219 S.E.2d 898, 900 (1975); *Rowand* v. *Rowand,* 215 Va. 344, 346, 210 S.E.2d 149, 151 (1974). Consistent with these cases, the Supreme Court in *Breschel* held that "a wife is free from legal fault in leaving her husband where she reasonably believes her health is endangered by remaining in the household and she has unsuccessfully taken whatever reasonable measures might eliminate the danger without breaking off cohabitation." 221 Va. at 212, 269 S.E.2d at 366. The chancellor correctly distinguished the facts in *Breschel* from those in the present case on the issue of reasonable measures to eliminate the danger without breaking off cohabitation. The Rexrodes had separated on several occasions in the past and Mr. Rexrode had successfully persuaded Mrs. Rexrode to return to the marital home. Counseling was discussed but neither party pursued it. Coupled with the uncertainty of the real cause of Mrs. Rexrode's emotional difficulties and the lack of evidence of reasonable efforts on her part to eliminate any undesirable conduct on the part of Mr. Rexrode, we hold that the chancellor did not err in finding that the evidence failed to establish justification for Mrs. Rexrode's leaving. Consequently, since the evidence supports the chancellor's finding that Mr. Rexrode is entitled to a divorce on the grounds of desertion, she is not entitled to support and maintenance.

## II.

We turn now to a review of the trial court's award of equitable distribution. By order of December 28, 1984, the chancellor denied spousal support to both parties, awarded Mrs. Rexrode one half of the equity of the marital home, held that a Dupont Credit Union savings account was the separate property of Mr. Rexrode and, finally, held that the tangible property acquired during the marriage "should be divided equally between the parties." We

limit our review here to the chancellor's determination that the Dupont Credit Union savings account is the separate property of Mr. Rexrode in the context of the court's total equitable distribution award.[1] The statutory scheme of Code § 20-107.3 requires, however, that this review not be made in a vacuum but rather in relation to and in accordance with all of the provisions of this code section.

The depositions of the parties support a conclusion that Mr. Rexrode had initiated the Dupont Credit Union savings account with his employer prior to the marriage and that he contributed to this account during the marriage. Mr. Rexrode testified that at the time of the marriage this account contained savings of $13,000, a part of which was used to purchase the marital home during the marriage. He further testified that during the marriage he made deposits from his income into this account and that the Credit Union made payments "on the house payment and the electric bill." Mrs. Rexrode made no monetary contributions to this particular account, but she claims to have made other payments from her income which benefited the parties.

The determination of property as separate or marital is controlled by statutory definition. Separate property as defined in Code § 20-107.3(A)(1) is:

(i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party; and (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property. Income received from, and the increase in value of, separate property during the marriage is separate

---

[1] Subsequent to oral arguments in this case the Supreme Court held in *E.B. Rudiger & Sons, Inc. v. Hanckel-Smith Co., ___ Va. ___*, 335 S.E.2d 257 (1985) that the failure to timely file an appeal bond is a jurisdictional defect requiring dismissal of an appeal. This court has, therefore, dismissed appeals to the Court of Appeals when a party has failed to file an appeal bond as required by statute. *Burns v. C.W. Wright Construction Co.*, 1 Va. App. 256, 336 S.E.2d 908 (1985). Accordingly, we cannot evaluate substantive provisions of the court's equitable distribution award concerning the marital home of the parties raised by Mr. Rexrode in this case due to his failure to timely post an appeal bond as required by Code § 8.01-676.1.

property.

Marital property, as defined by statute in pertinent part, is "all other property acquired by each party during the marriage which is not separate property as defined above." Code § 20-107.3(A)(2).

Applying these definitions to the facts of this case in order to classify the funds in the savings account, it is clear that to the extent that the funds can be identified as having been "acquired before the marriage," they are the separate property of Mr. Rexrode. It is equally clear that to the extent that the funds can be identified as having been "acquired during the marriage" from Mr. Rexrode's income from his employment, as opposed to income generated from the funds in the account, they are marital property and not his separate property. Code § 20-107.3 provides a general scheme for resolving this apparent conflict. All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property.[2] Under generally accepted principles, the party (Mr. Rexrode in this case) claiming property as separate has the burden to produce satisfactory evidence to rebut this presumption.

The record is devoid of evidence upon which the chancellor or this court could properly identify and then classify the funds in this account as separate or marital property at the time the chancellor made his determination. Faced with the statutory presumption of marital property and the lack of satisfactory evidence to rebut it, a determination that all the funds in this account were separate property of Mr. Rexrode is not sustainable. Furthermore, the unresolved determination of the issue of the separate property of the parties necessarily and unavoidably clouds the resolution of the issue of the equities of the parties in the other property which is undisputed to be marital property. In other words, our decision that the chancellor must reevaluate the classification of the funds in the savings account *may* very well have a ripple effect. Therefore, this reevaluation cannot take place in a vacuum. Rather, if upon remand the chancellor determines that some or all of the funds in the savings account are marital property, then the total of marital property would be increased and this would then require

---

[2] Code § 20-107.3(A)(2) was amended in 1984 to include in this section "before the filing of a bill of complaint stating a ground for divorce."

that the chancellor reevaluate his prior award. Any such reevaluation must be based on the new evidence heard by the chancellor, as well as the evidence already of record in this case. In addition to the evidence regarding the Dupont Credit Union savings account, the chancellor has heard evidence regarding the marital home and other tangible personal property acquired during the marriage. We relate that evidence here in order to illustrate the interrelationship of all the factors which must be considered by the divorce court in constructing a monetary award.

It is undisputed that during the marriage the parties acquired the marital home as tenants by the entirety and that it had a present value as of December 10, 1984, of $81,500 and a principal balance of a first deed of trust of $5,700. Mr. Rexrode testified that he had contributed $40,000 from his separate property toward the home and had made the monthly mortgage payments from the Dupont Credit Union savings account, reducing the original loan of $35,000. In addition to these facts the chancellor considered the nonmonetary contributions of Mrs. Rexrode in arriving at the decision to divide the equity equally between the parties. These contributions included her assistance in the upbringing of Mr. Rexrode's children and what was described as other domestic "duties."

The chancellor's order then provides that:

> The tangible personal property which was acquired during the marriage should be divided equally between the parties. If the parties are unable to reach an agreement on the division of this property, this matter shall be referred to one of the Master Commissioners of this Court upon petition of either party requesting that this be done.

The provisions of Code § 20-107.3 provide a statutory scheme for granting a monetary award in an appropriate case based upon the equities and the rights and interests of each party in the marital property. This code section is not merely an authorization to distribute real and personal property accumulated during the marriage. While partition of marital property is permitted, the statutory scheme embodied in this code section is much broader and more significant than that.

■ With the enactment of Code § 20-107.3 in 1982, the Virginia General Assembly authorized the divorce courts of this Commonwealth, applying specifically enumerated factors, to reach an equitable resolution of the issue of the division of the jointly acquired wealth of the spouses during their marriage. This authorization is in addition to rights of spousal support and is not limited to traditional notions and limitations of title ownership. The divorce court is permitted, but not required, to grant a monetary award in favor of one spouse which equitably distributes the wealth acquired by the parties during the marriage based on the recognition of the contributions, monetary and nonmonetary, of both parties.

■ Accordingly, where, as in this case, the divorce court determines that an equitable award is appropriate, then *all* of the provisions of Code § 20-107.3 must be followed. The court is mandated to "determine the legal title as between the parties, and the ownership and value of *all* real and personal property of the parties and shall consider which of such property is separate property and which is marital property." *Id.* (emphasis added). The correctness of the identification of the separate property necessarily by statutory definition mandates the identification of the marital property since marital property includes all other property acquired by each party to the marriage which is not separate property. Code § 20-107.3(A)(2). Once the marital property is identified and valued, then the court is authorized to make a monetary award based on all the factors enumerated in Code § 20-107.3(E). Such an award may be satisfied by the party against whom it is awarded by conveyance of property subject to the approval of the court.

In reviewing an equitable distribution award, on appeal, we recognize that the task of the trial court is a difficult one.

It can fairly be said that the articulation of the standards and criteria which are to be taken into account in determining an equitable distribution of property is generally a task considerably less formidable than applying them. "[W]e rely heavily, as we must, on the discretion of the trial judge in making these delicate and difficult judgments." . . . Of course, we recognize that a trial judge "does not fulfill his heavy judgmental obligation by routinely or mechanistically

dividing the marital assets equally." . . . "[T]he word equitable itself implies the weighing of the many considerations and circumstances that are presented in each case."

*Wadlow v. Wadlow,* 200 N.J. Super. 372, 377-78, 491 A.2d 757, 760 (1985) (citations omitted).

In the present case, we cannot find from the record that the chancellor considered all the relevant factors and the appropriate statutory definitions in making a determination that the Dupont Credit Union savings account was the separate property of Mr. Rexrode. This determination eliminated from consideration that portion of this account which was marital property. In addition, the chancellor's order reflects that he considered the equities of the parties in the marital home separate and apart from their interest in marital personal property or other separate property. By considering only specific parts of the financial circumstances of the parties, and not "all real and personal property of the parties," and not all of the factors enumerated in Code § 20-107.3(E), the statutory scheme for arriving at an equitable award is frustrated.

Accordingly, based on the chancellor's error regarding the savings account, and for the reasons stated herein the provisions of the December 28, 1984, order concerning the monetary award are vacated and this case is remanded for further proceedings consistent with this opinion.

*Affirmed in part,*
*vacated in part,*
*and remanded.*

Coleman, J., and Keenan, J., concurred.