COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judges Huff and Callins
Argued by videoconference


THOMAS A. CARR

v.        Record No. 0607-22-2

MARIBETH C. CARR

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
APRIL 11, 2023

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

Susan C. Armstrong (Armstrong Law Firm, pllc, on briefs), for
appellant.

Richard L. Locke (Shannon S. Otto; Locke & Otto, on brief), for
appellee.


The Henrico County Circuit Court (the "trial court") awarded Maribeth C. Carr ("wife") a

divorce from Thomas A. Carr ("husband").  On appeal, husband contends the trial court erred in

awarding wife spousal support because she failed to prove her need for spousal support.

Husband also asserts the trial court failed to sufficiently articulate its consideration of the factors

set forth under Code § 20-107.1(E) in support of its award of spousal support.  Finally, husband

claims the trial court erred by not awarding him a divorce from wife on the basis that she

deserted their marriage.  For the following reasons, this Court affirms the trial court's judgments.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND[1]

"When reviewing a trial court's decision on appeal, [this Court] view[s] the evidence in the light most favorable to the prevailing party,"—here, wife—"granting [her] the benefit of any reasonable inferences." *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

The parties married on June 24, 1989, and have three adult children. For most of the marriage, wife stayed at home to care for the children while husband worked. Beginning in 2010, wife began to work full-time as a real estate agent. In 2015, wife told husband that she felt unhappy with their marriage, and the parties participated in marriage counseling sessions. In March 2016, the parties executed a "Collaborative Participation Agreement" to use the collaborative process to dissolve their marriage without litigation. They paused the collaborative process shortly thereafter when wife was diagnosed with a medical illness requiring extensive treatment.

In January 2017, wife moved out of the marital residence. In December 2017, she asked husband to reconcile, and the parties attempted to reconcile until December 2019. Notwithstanding their attempts at reconciliation, the parties continued to live separately. At the end of 2019, they resumed the process to dissolve their marriage and engaged in that collaborative process until the end of 2020. The parties ended the collaborative process after failing to resolve all their issues.

On January 13, 2021, wife filed a complaint for divorce and requested the trial court grant her a divorce on the grounds that the parties had lived separate and apart for more than one year. She also asked the court to equitably distribute the parties' assets, award her pendente lite and

---

[1] Portions of the record in this case were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues husband has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

permanent spousal support, and grant her attorney fees and costs. Husband filed a counterclaim requesting a divorce on the grounds of desertion, "or, in the alternative, on the ground of the parties' one-year separation." He also sought an award of equitable distribution and his attorney fees and costs. After a pendente lite hearing, the trial court ordered husband to pay wife $8,500 per month in spousal support during the pendency of the litigation

On October 25, 2021, the trial court entered an order incorporating the parties' equitable distribution agreement. In addition to other provisions in the agreement, husband agreed to pay wife $1,110,124, plus a portion of the distributions he would receive from the sale of his interest in the company "SYCOM" to his new employer, InterVision.

On November 17, 2021, the case proceeded to trial with respect to the issues of spousal support, the grounds for divorce, and life insurance.[2] Wife testified that the parties had "built a really nice life," which included a country club membership, a vacation home, private schools for their children, multiple vacations per year, and foreign travel. As to her income as a real estate agent, wife testified that she earned $70,485.75 in 2021, "about half" of what she earned in 2020. Wife also submitted, without objection, an income and expense statement showing that her monthly expenses totaled $21,379. She testified that the expenses listed therein were "at or below the standard of living that [she] had during the marriage."

Wife acknowledged that her 2021 income did not account for income she would receive from investing her share of the equitable distribution settlement. She also testified that she made a $250,000 down payment on a new condominium home using money she borrowed from her father and that she repaid her father using the equitable distribution settlement. During cross-examination, however, wife admitted that her father had gifted her the $250,000 to purchase the home. At the

---

[2] Husband did not appeal the trial court's rulings regarding life insurance.

time of trial, wife had $977,563 in her bank account and $160,000 in a separate investment account.[3]

Husband introduced testimony from an expert financial planner who opined as to the additional annual income wife could receive if she invested her assets. The expert assumed that wife would receive an inheritance in the future, that wife's annual income was $150,000, and that wife was willing to make "substantially risky investment[s]." The expert concluded that, if wife invested between $1,100,000 and $1,300,000 in a portfolio consisting of "[a]bout 60 percent in stocks and 40 percent in bonds," she could expect a seven percent return on her investment resulting in additional annual income between $66,000 and "just over" $90,000.

During cross-examination, husband's expert financial planner admitted that if wife did not receive an inheritance in the future, she could expect only a five percent return on her investments, two percent of which would be "income." The remaining three percent of her return would be comprised of asset appreciation and require her to liquidate part of her original investment. The expert further admitted that he did not know wife's risk tolerance for investing and that, if she was risk adverse, her rate of return would be lower. The expert conceded that, if wife was "very risk adverse," he had "no ability to assume what the rate of return would be." Neither party offered any other evidence or testimony regarding wife's risk tolerance.

As to his income, husband testified that he had a base salary of $306,000 with a potential for a $120,000 bonus. He admitted that he had approximately one million dollars in cash at the time of trial and that he "should be able to get the same return" on his investments as wife. Husband also acknowledged that he and wife were "entitled to live at the same standard of living" as they did

---

[3] In explaining the amount of money in her bank account, wife testified that she received $159,000 from the sale of her interest in a mobile home park in addition to her share of the equitable distribution settlement.

during their marriage, which he estimated at costing $22,796 per month, including retirement savings.

At the conclusion of trial, the court directed the parties to file written closing arguments. Wife requested she be awarded $10,000 per month in permanent spousal support. In opposition, husband argued that wife had deserted the marriage and that she failed to prove her need for spousal support given her "acquired wealth and her demonstrated ability to support herself." Husband further argued that wife's income and expense statement was "a sham."

Following the parties' submission of their written closing arguments, the trial court issued a thirteen-page letter opinion addressing all unresolved matters between the parties. As to the grounds for divorce, the trial court found that husband failed to prove wife deserted the marriage, noting the parties' "unsuccessful efforts to amicably divorce." The court granted wife a "no-fault" divorce based on the parties' one-year separation.

The trial court then devoted the vast majority of its letter opinion to addressing each of the statutory factors—listed in Code § 20-107.1(E)—for awarding spousal support. The court found that, at the time of the hearing, wife was earning approximately $70,485 per year but had a five-year average income of $105,408. It further found that wife could invest the funds she received from the equitable distribution settlement, which could yield "$20,000 to $90,000 in additional earnings per year depending on the amount invested and risk tolerance." The trial court noted, however, that it "cannot demand the liquidation of her assets causing a reduction in the current value of her portfolio" and that "[w]ife could invest in a way that did not reduce the current value such that she

would receive about $20,000." Because it found that wife's expenses were "inflated," the court stated that it would not consider "all or part of" certain monthly expenses totaling $8,710.[4]

Ultimately, the trial court concluded that both parties were "millionaires due to the equitable distribution and have the means to support themselves"; as a result, "[t]he main issue for contemplation is whether the [w]ife is entitled to an award of spousal support to afford her the same standard of living she enjoyed during the marriage." The court described that standard as an "affluent lifestyle." After considering all the factors under Code § 20-107.1(E), including husband's ability to pay, the trial court awarded wife $10,000 per month in spousal support.

Husband filed a motion for reconsideration, arguing that the trial court incorrectly stated the total amount of wife's expenses, incorrectly determined wife's income—including potential investment income—and failed to provide "any concrete analysis that would indicate how the [c]ourt could have arrived at the spousal support amount it awarded." The trial court denied husband's motion, and this appeal followed.

ANALYSIS

*A. Spousal Support*

Husband contends the trial court erred in awarding wife spousal support because she failed to prove her need for it. He argues that wife had "the ability to provide for her own support" and that the trial court erred by failing to impute at least $65,000 of annual investment income to wife and by considering the expenses listed in her income and expense statement despite finding they were "inflated." For the following reasons, this Court disagrees and affirms the judgment of the trial court.

_____

[4] The trial court appears to have erroneously considered the income and expense statement wife submitted at the pendente lite hearing that listed wife's monthly expenses at $26,909 instead of the statement submitted for trial which listed wife's monthly expenses at $21,379. For reasons explained below, we find that this error did not affect the judgment.

"In determining the appropriate amount of spousal support, the trial court must consider the needs of the requesting party and the other spouse's ability to pay." *Wyatt v. Wyatt*, 70 Va. App. 716, 719 (2019) (quoting *Alphin v. Alphin*, 15 Va. App. 395, 401 (1992)). "When a court awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the evidence, its determination 'will not be disturbed except for a clear abuse of discretion.'" *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 435 (2020) (quoting *Dodge v. Dodge*, 2 Va. App. 238, 246 (1986)).

At the outset, husband argues that the trial court should have imputed at least $65,000 of annual investment income to wife because his financial planning expert testified that wife could receive a seven percent annual return on her investments and withdraw "$65,000 to $91,000 per year" without reducing the initial balance of her investment portfolio.[5] "The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." *Collins v. Leeds*, 69 Va. App. 1, 9 (2018) (quoting *McKee v. McKee*, 52 Va. App. 482, 489 (2008) (en banc)). As the party seeking to have income imputed to wife, husband was "required to present evidence 'sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated.'" *Id.* (alteration in original) (quoting *McKee*, 52 Va. App. at 489).

In this case, husband's financial planning expert qualified the testimony husband relies on in support of his appeal. The expert explained that if wife did not receive an inheritance in the future, she could only realize a five percent annual return on her investment, two percent of which would

---

[5] Husband also argues that the trial court failed to specify the amount of wife's investment income. The trial court found that it could not "demand the liquidation of [wife's] assets causing a reduction in the current value of her portfolio." It further found that husband's "expert also testified that the [w]ife could invest in a way that did not reduce the current value such that she would receive about $20,000." Accordingly, this Court addresses only husband's argument that the trial court should have imputed at least $65,000 of annual investment income to wife.

be "income." He further explained that the remaining three percent of wife's return would be comprised of asset appreciation and require her to liquidate part of her original investment. On cross-examination, husband's expert admitted he did not know wife's risk tolerance for investing and that her rate of return would be lower if she were risk adverse. Indeed, if wife were "very risk adverse," the expert conceded that he had "no ability to assume what the rate of return would be."

"The 'credibility of the expert witness and the weight to be accorded the evidence' is a matter exclusively in the province of the factfinder . . . and is not ordinarily subject to appellate review." *deCamp v. deCamp*, 64 Va. App. 137, 155 (2014) (quoting *Lemond v. Commonwealth*, 19 Va. App. 687, 694 (1995)). In light of the assumptions made by husband's expert and the trial court's discretion in weighing his testimony, the trial court was not plainly wrong or without evidence to impute less than $65,000 in annual investment income to wife. Husband's expert witness even conceded that wife's annual return on investment could be lower than five percent given the assumptions he made about wife's assets and risk tolerance without having concrete knowledge of either. Accordingly, the trial court did not err by awarding spousal support based on its decision to impute $20,000 annual investment income to wife. *See id.* at 150 ("Whether to impute income to a spouse seeking support is simply one component of calculating the 'amount' of support under the statutory factors listed in Code § 20-107.1(E)." (quoting *Brandau v. Brandau*, 52 Va. App. 632, 638 (2008))).

Regardless of wife's annual investment income, husband argues that the trial court erred in awarding wife spousal support at all because she failed to prove her claimed monthly expenses. In support of his argument, husband points out that the trial court itself found some of the expenses listed in wife's income and expense statement were "inflated, unreasonable, or inaccurate." Given the court's factual findings and husband's claim that additional expenses were "exposed as being

entirely unreliable on cross examination," husband argues that the trial court should have "totally rejected" wife's income and expense statement.[6]

In essence, husband claims the trial court erred by "accept[ing] [wife's] unreliable evidence." It was in the province of the trial court as the trier of fact, however, to determine what weight to afford the evidence wife presented. *See Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) ("It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." (quoting *Anderson v. Anderson*, 29 Va. App. 673, 686 (1999))); *see also Pilati v. Pilati*, 59 Va. App. 176, 183 (2011) ("What weight, if any, to assign to this [or that] factor in the overall decision lies within the trial court's sound discretion." (alteration in original) (quoting *Robbins v. Robbins*, 48 Va. App. 466, 481 (2006))).

Husband did not object to wife's income and expense statement nor her testimony in support of her claimed expenses therein. Moreover, husband conceded that wife was "entitled to live at the same standard of living" as during their marriage, which he estimated as costing $22,796 per month. Accordingly, wife's claimed expenses were supported by evidence and the trial court had discretion to determine what weight, if any, to afford them. Indeed, the trial court made explicit note in its opinion letter as to which of wife's claimed expenses it did not consider in determining the amount of spousal support to award. In denying husband's motion for reconsideration, the trial court considered and rejected the same evidentiary arguments husband now advances on appeal. Under

---

[6] Husband also asserts that in making its final ruling, the trial court considered the income and expense statement wife submitted at the pendente lite hearing, rather than the one she submitted at the final hearing. He assumes this mistake accounts for $5,530 of wife's $10,000 monthly spousal support order because that is the difference between the two expense reports. The record shows that the court considered the parties' standard of living during the marriage, considered their respective incomes, and the other statutory factors under Code § 20-107.1(E). The court fashioned a spousal support order based on maintaining roughly equivalent standards of living. Accordingly, we cannot say the error on the expense figures affected the judgment.

these circumstances, the trial court did not abuse its discretion in awarding wife spousal support based in part on wife's income and expense statement. *See Conley v. Bonasera*, 72 Va. App. 337, 346 (2020) ("[F]actual findings made by a court in support determinations are entitled to great deference and will be overturned only for an abuse of discretion.").

In his next challenge to the award of spousal support, husband contends that the trial court erred in failing to sufficiently articulate its consideration of the Code § 20-107.1(E) factors in support of the award. Husband asserts that "there was nothing stated by the trial [c]ourt to explain why it awarded wife $10,000 in spousal support" because it merely recited the statutory factors and "briefly salute[d] [the] evidence it heard."

Code § 20-107.1(F) provides in relevant part that "[i]n contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order." That statutory obligation "requires more than merely communicating 'the fundamental, predominating reason or reasons for the decision.'" *Pilati*, 59 Va. App. at 182 (quoting *Kane v. Szymczak*, 41 Va. App. 365, 373 (2003)). "Instead, to comply with Code § 20-107.1(F), the trial court should identify all relevant statutory factors supporting its decision and provide an explanation of its resolution of any significant underlying factual disputes." *Id.* "While a trial judge must consider all the factors, the judge is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" *Id.* at 183 (quoting *Duva v. Duva*, 55 Va. App. 286, 300 (2009)). "What weight, if any, to assign to this [or that] factor in the overall decision lies within the trial court's sound discretion." *Id.* (alteration in original) (quoting *Robbins*, 48 Va. App. at 481).

In this case, the trial court's thirteen-page letter opinion addressed each of the Code § 20-107.1(E) factors for awarding spousal support and explained its factual findings as to the

evidence in relation to those factors. In doing so, the court considered the parties' respective incomes, assets, and expenses, as well as their standard of living and the circumstances regarding the dissolution of their marriage. Only after "[h]aving considered the [statutory] factors, the wife's needs, the standard of living during the marriage and the husband's ability to pay," did the trial court award wife spousal support. Although husband asserts he cannot discern how the trial court calculated the spousal support award, "[t]he General Assembly did not intend the statutory decisionmaking factors to devolve into an algorithm and thereby project a pretense of certitude." *Pilati*, 59 Va. App. at 183. This Court finds that the trial court's written findings in support of its spousal support award complied with the requirements of Code § 20-107.1(F).

Moreover, although the trial court acknowledged that the parties had the ability to support themselves, the record reflects that husband earned more than wife, and he even conceded that wife was entitled to maintain the same standard of living as during the marriage. Husband does not dispute his ability to pay spousal support. After hearing the evidence and arguments and considering all the statutory factors, the trial court found that "[t]he main issue for contemplation [wa]s whether the [w]ife [wa]s entitled to an award of spousal support to afford her the same standard of living she enjoyed during the marriage," which it described as an "affluent lifestyle." Because the trial court's written findings demonstrate that it gave due consideration to the factors enumerated in Code § 20-107.1(E), it did not abuse its discretion in awarding wife spousal support in the amount of $10,000 per month. Accordingly, this Court affirms the trial court's judgment. *See Chaney*, 71 Va. App. at 435.

### B. Grounds of Divorce

The trial court granted wife a divorce based on the parties living separate and apart for more than one year. Husband asserts the trial court erred by not granting him a divorce based on wife's alleged desertion. Specifically, husband argues that wife "did not present any evidence that justified

- 11 -

. . . her leaving and refusing to return to the marital home." This Court disagrees and affirms the trial court's judgment.

"Where dual or multiple grounds for divorce exist, the trial judge can use his [or her] sound discretion to select the grounds upon which he [or she] will grant the divorce." *Fadness v. Fadness*, 52 Va. App. 833, 840 (2008) (quoting *Konefal v. Konefal*, 18 Va. App. 612, 613-14 (1994)). "Circuit courts are 'not compelled "to give precedence to one proven ground of divorce over another."'" *Id.* (quoting *Williams v. Williams*, 14 Va. App. 217, 220 (1992)). Although husband requested a divorce based on desertion, both parties also requested a divorce on the basis that they had been separated for more than one year. Therefore, even if the trial court had concluded that wife deserted the marriage, it could nevertheless have chosen to grant husband a divorce on his requested no-fault grounds. As husband even admits in his briefs, a finding of desertion would not require the trial court to grant a divorce on those grounds when the evidence was sufficient to prove the alternate no-fault grounds.

The parties had lived separate and apart since January 2017, approximately four years before wife filed her complaint for divorce. Neither party claims the one-year period of separation required for a no-fault divorce had not been satisfied by the time of trial and entry of the divorce decree. Accordingly, the trial court did not abuse its discretion in granting the divorce based on the duration of the parties' separation.

Husband further contends that the trial court's erroneous determination on the specific issue of wife's desertion affected its determination of spousal support. "[I]n determining *whether* to award support and maintenance for a spouse," the trial court must "consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery and any other ground for divorce." Code § 20-107.1(E) (emphasis added). Husband claims the court should

have considered wife's desertion in this context and refused to award her spousal support.[7] This Court finds no merit in that claim.

Virginia courts have repeatedly recognized that "[a] spouse may be free from legal fault in breaking off cohabitation, and hence entitled to support and maintenance, even though she cannot establish that the other spouse's conduct constituted the foundation of a proceeding for divorce," such as cruelty. *Rexrode v. Rexrode*, 1 Va. App. 385, 390 (1986); *see, e.g.*, *Capps v. Capps*, 216 Va. 382, 385 (1975) (holding that wife "was free from legal fault" where she left her husband because of a single incident of his physical abuse even though she was not entitled to a divorce grounded upon his cruelty). Here, "[i]n consideration of the totality of the evidence," the trial court expressly found that husband "did not meet the burden of proof," and therefore "there is insufficient evidence to establish desertion pursuant to . . . Code § 20-91(6)." The record provides ample support for that determination, including the parties' initial attempts to reconcile, engagement in marital counseling, and execution of an agreement to dissolve their marriage through a collaborative divorce process—all prior to wife's departure from the marital home in January 2017. Additionally, wife's medical complications, which began in March 2016, resulted in the parties putting the pending divorce process on hold while she received extensive treatment.

All combined, the recent "deaths of her mother and brother as well as" wife's own medical battles "caused a strain on the marriage," and wife did not receive the requested level of care and support from husband. *See Breschel v. Breschel*, 221 Va. 208, 212 (1980) (holding that "a wife is free from legal fault in leaving her husband where she reasonably believes her health is endangered by remaining in the household and she has unsuccessfully taken whatever reasonable measures might eliminate the danger without breaking off cohabitation"). As the trial court did not err in

---

[7] *See* Code § 20-91(9)(c) (providing that a divorce granted on no-fault grounds "shall in no way lessen any obligation any party may otherwise have to support the spouse unless such party shall prove that there exists in the[ir] favor . . . some other ground of divorce").

finding husband's evidence insufficient to establish wife's desertion, its refusal to deny wife spousal support on those grounds was proper.

Likewise, in determining the nature, amount, and duration of the spousal support, the trial court did not err in refusing to assign fault to wife under Code § 20-107.1(E)'s thirteenth factor. That factor requires the court to consider "the circumstances and factors that contributed to the dissolution" of the marriage, "specifically including any ground for divorce, *as . . . necessary to consider the equities between the parties*." Code § 20-107.1(E)(13) (emphasis added). However, the "circumstances and factors" the court may consider "are not limited to the legal grounds for divorce" and instead "encompass[] all behavior that affected the marital relationship, including any acts or conditions which contributed to the marriage's failure, success, or well-being." *Wyatt*, 70 Va. App. at 719 (alteration in original) (quoting *Barnes v. Barnes*, 16 Va. App. 98, 102 (1993)).

In considering both parties' behavior leading up to the dissolution of the marriage, the trial court found that

> [a]lthough the [h]usband alleged desertion as a grounds of divorce, . . . the evidence was insufficient. Both [parties] allege intimate relationships with other people outside of the marriage during times of separation. There were stressors in the marriage that were beyond the [p]arties' control which unfortunately dampened the marriage such as the history of cancer causing the death of her mother and brother as well as the [w]ife's own battle.

It was proper for the trial court to not assign fault to wife for leaving the marital home in January 2017 based on husband's unproven desertion claim.[8]

Accordingly, this Court finds the trial court's judgments are supported by the evidence: the trial court did not abuse its discretion in granting wife a divorce on no-fault grounds, in finding that

---

[8] Even if the trial court had considered wife's alleged desertion in this context, its effect would nevertheless be limited to consideration of "the needs of the requesting party and the other spouse's ability to pay." *Wyatt*, 70 Va. App. at 719 (quoting *Alphin*, 15 Va. App. at 401).

husband did not prove wife's desertion, and in determining that none of the parties' behaviors leading up to the dissolution of the marriage justified denying wife spousal support.

## C. Appellate Attorney Fees

Wife asks this Court to award her appellate attorney fees and costs "[b]ased on the record in this case" and "the lack of merit to [h]usband's appeal." Notwithstanding her request, the parties agreed, as part of their equitable distribution settlement, that "each side is going to pay their own attorney's fees in the current divorce action." Given that agreement, this Court denies wife's request for an award of appellate attorney fees and costs. *See Jones v. Gates*, 68 Va. App. 100, 106 (2017) ("[I]f a property settlement agreement contains a provision awarding attorney's fees, the court must follow the terms of that agreement, to the extent allowable by law.").

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*